<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

|  |  |  |
|---|---|---|
| _____ | : | |
| MILLBURN POLICE OFFICER GINO | : | |
| BALDANI, | : | |
|  | : | |
| Plaintiff, | : | Civil Action No. 07-4792 (JAG) |
|  | : | |
| v. | : | **OPINION** |
|  | : | |
| TOWNSHIP OF MILLBURN AND THE | : | |
| GOVERNING BODY OF THE | : | |
| TOWNSHIP OF MILLBURN, | : | |
|  | : | |
|  | : | |
| Defendants. | : | |
| _____ | : | |

<u>GREENAWAY, JR., U.S.D.J.</u>

This matter comes before this Court on the Motion to Dismiss Complaint For Failure To State A Claim Upon Which Relief Can Be Granted by defendants Township of Millburn (the "Township") and the Governing Body of the Township of Millburn (the "Governing Body," and, collectively with the Township, the "Defendants"), pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth below, this motion shall be granted, in part, and denied, in part.

**I. <u>FACTS</u>**

Plaintiff Gino Baldani ("Plaintiff") is a police officer for the Millburn Police Department, in Essex County. (Compl. ¶ 1.) Plaintiff holds a position as "PBA president."[1] (<u>Id.</u> at ¶ 5.) According to Plaintiff, "[t]he defendants have historically interfered [with] and abridged [his]

---

[1] When referencing the "PBA" in the Complaint, Plaintiff, presumably, is referring to the Policemen's Benevolent Association.

freedom of speech and assembly rights . . . ." (<u>Id.</u>)

In support of this allegation, Plaintiff offers four instances in which he received unfair treatment. First, Plaintiff asserts that, "at one point in time, he was advised by a high-ranking superior that he would 'never be promoted' because he was 'PBA President.'" (<u>Id.</u>) Second, Plaintiff alleges that "when pictures and copies of plaintiff were posted all over police headquarters, the defendants did absolutely nothing to curb what was transpiring." (<u>Id.</u> at ¶ 15.) Third, the Complaint states that Plaintiff "has reported certain wrongs to his superiors over the last several months, properly believing he was protected by the New Jersey Conscientious Employee Protection Act," and that "the defendants have surreptitiously retaliated against him in myriad ways." (<u>Id.</u> at ¶ 17.)

The crux of the Complaint focuses on the last allegation, namely, the disciplinary charges filed against Plaintiff. (<u>Id.</u> at ¶¶ 7-14.) "[T]he defendants, either individually or acting in concert, have waged a personal war against plaintiff, which actions culminated in defendants illegally charging the plaintiff with serious departmental rule violations on December 20, 2005 . . . ."[2] (<u>Id.</u> at ¶ 7.) Plaintiff argues that, although Defendants knew that the allegations were "bogus, preconceived, illegally brought and totally without basis in fact," Defendants went forward with filing the disciplinary charges, thereby "forc[ing] the plaintiff to stand a humiliating administrative trial . . . ." (<u>Id.</u> at ¶ 8.) The hearing was conducted before Township Administrator Tim Gordon, who, instead of "summarily rul[ing] in plaintiff's favor immediately after the case was concluded that same day," decided instead to reserve his decision until a later

---

[2] In the Complaint, Plaintiff references "the attached preliminary Notice of Disciplinary Action." (<u>Id.</u> at ¶ 7.) However, no such attachment appears in the record before this Court.

date.  (Id. at ¶ 11.)  Plaintiff asserts that the decision was to be provided within thirty days of March 31, 2006, but that, as of the date the Complaint was filed, it had not yet been issued.  (Id. at ¶¶ 11-12.)  According to Plaintiff, "[t]he defendants knew full well, all along, that a decision would never be rendered, despite [Plaintiff's] clear innocence on all administrative charges."  (Id. at ¶ 13.)

On October 2, 2007, Plaintiff initiated an action against Defendants.  In his Section 1983 claim, Plaintiff alleges that Defendants violated his First Amendment rights by retaliating against him, as a result of his exercise of his protected speech and assembly rights.  (Id. at ¶ 21.)  Plaintiff also raises a claim against Defendants under the New Jersey Conscientious Employee Protection Act (the "CEPA"), as well as a common-law intentional infliction of emotional distress claim.  (Id. at ¶¶ 21-23.)

## II.  STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)."  Id. at 1965 (internal citations omitted).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1357 at 340 (2d ed. 1990)).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997).  "The defendant bears the burden of showing that no claim has been presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1974; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim).

4

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).  Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment.  FED. R. CIV. P. 12(d).

## III.  ANALYSIS

### A.    Section 1983

Defendants offer two arguments in support of dismissing Plaintiff's Section 1983 claim.  First, Defendants argue that Plaintiff's Section 1983 claims should be dismissed because municipalities cannot be held liable in Section 1983 claims absent "the existence of an official municipal policy whose enforcement violated [the plaintiff's] constitutional rights."  (Def. Br. 4.)  Second, Defendants contend that Plaintiff's position as PBA President and his speech regarding PBA matters should not be afforded First Amendment protection.

    1.    <u>Liability of Municipalities Under Section 1983</u>

The Supreme Court has held that municipalities cannot be held vicariously liable for the alleged constitutional violations performed by its employees.  <u>Monell v. Dept. of Soc. Serv. of the City of N.Y.</u>, 436 U.S. 658, 691 (1978).  However, "[a] municipality can be sued directly under § 1983 if it is alleged to have caused a constitutional tort through a policy, ordinance, regulation or officially adopted decision that has been promulgated by the municipality's officers."  <u>Brennan v. Norton</u>, 350 F.3d 399, 427 (3d Cir. 2003).  "Liability also attaches for a municipality's constitutional violations resulting from governmental custom even though such custom has not been formally approved via the official decision making channels."  <u>Id.</u>

Plaintiff claims that Defendants violated his First Amendment rights to free speech and freedom of assembly by engaging in retaliatory conduct.  In the Complaint, he describes three instances in which such retaliation occurred: (1) Plaintiff was told by a high-ranking superior that he would never be promoted because he was president of the PBA; (2) Plaintiff endured the humiliation of an administrative hearing after disciplinary charges were filed against him; and (3) pictures of Plaintiff were posted around the police department.

    a.    *Disciplinary Charges*

In the Complaint, Plaintiff alleges that "the defendants, either individually or acting in concert, have waged a personal war against plaintiff, which actions culminated in defendants illegally charging the plaintiff with serious departmental rule violations on December 20, 2005 . . . ."  (Compl. ¶ 7.)  However, the Complaint fails to allege the existence of a municipal custom or policy that violates Plaintiff's First Amendment rights.

Under New Jersey law, an officer may not be

> removed from his office, employment or position for political
> reasons or for any cause other than incapacity, misconduct, or
> disobedience of rules and regulations established for the
> government of the police department and force, nor shall such
> member or officer be suspended, removed, fined or reduced in rank
> from or in office, employment, or position therein, except for just
> cause as hereinbefore provided and then only upon a written
> complaint setting forth the charge or charges against such member
> or officer. The complaint shall be filed in the office of the body,
> officer or officers having charge of the department or force wherein
> the complaint is made and a copy shall be served upon the member
> or officer so charged, with notice of a designated hearing thereon
> by the proper authorities, which shall be not less than 10 nor more
> than 30 days from date of service of the complaint.

N.J. STAT. ANN. § 40A:14-147 (West, Westlaw through L.2008).  The board or authority charged

to oversee such hearings has the power to subpoena witnesses and documentary evidence.  N.J.

STAT. ANN. § 40A:14-148 (West, Westlaw through L.2008).  If the officer is found not guilty,

"the charges are dismissed or the prosecution is terminated, said officer shall be reinstated to his

position and shall be entitled to recover all pay withheld during the period of suspension subject

to any disciplinary proceedings or administrative action."  N.J. STAT. ANN. § 40A:14-149 (West,

Westlaw through L.2008).

Plaintiff admits in the Complaint that no decision has ever been rendered in the

administrative hearing brought against him.  (Compl. ¶¶ 11-12.)  Without citing to a final

decision resolving Plaintiff's disciplinary charges, Plaintiff has not alleged that the charges were

made or adopted by a sufficiently high-level municipal policymaker so as to subject the

municipality to liability.  See Brennan, 350 F.3d at 427-28 (holding that plaintiff, a former fire

fighter, may not maintain a Section 1983 claim against the township because the fire

department's denial of plaintiff's request for extended leave is not founded upon a custom or

policy of the municipality); <u>DeGuiseppe v. Village of Bellwood</u>, 68 F.3d 187, 190 (7th Cir. 1995) (granting defendants' motion to dismiss plaintiff's Section 1983 claim because official's disciplinary action was not made by the final decision-maker, as Illinois law vests the Board of Police and Fire Commission with final authority over all disciplinary decisions). Since a final decision has not yet been rendered in the hearing, Plaintiff is premature in attributing the disciplinary action to the municipality in his Section 1983 claim.

        b.    *Posting of Pictures*

Plaintiff also fails to allege facts sufficient to support his Section 1983 claim for failure to discipline. The Third Circuit has held that "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident[,] or knowledge of a prior pattern of similar incidents[,] and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." <u>Montgomery v. De Simone</u>, 159 F.3d 127 (3d Cir. 1998).

Plaintiff alleges in the Complaint that "when pictures and copies of plaintiff were posted all over police headquarters, the defendants did absolutely nothing to curb what was transpiring." (Compl. ¶ 15.) Plaintiff's allegation that Defendants acquiesced in responding to this situation could be inferred to indicate approval of the offensive conduct. However, Plaintiff does not allege that Defendants had any knowledge of the postings in the police department. <u>Cf.</u> <u>Moleski v. Cheltenham Twp.</u>, No. 01-4648, 2002 WL 32349132, at *16 (E.D. Pa. Apr. 30, 2002) (upholding plaintiff's Section 1983 failure to discipline claim at the motion to dismiss stage, where plaintiff alleged that he filed a complaint with the police department about the

complained-of conduct, and that no investigation was ever conducted); <u>Doe v. Evanko</u>, No. 00-5660, 2001 WL 283170, at *3 (E.D. Pa. Mar. 22, 2001) (declining to dismiss plaintiff's Section 1983 failure to discipline claim in which she alleged that officer had history of making sexual advances, and that the police department failed to discipline her).  Furthermore, the Complaint does not allege that the postings occurred on numerous occasions, and "one prior incident fails to fulfill the . . . <u>Montgomery</u> requirement of a pattern."  <u>Rudolph v. Clifton Heights Police Dept.</u>, No. 07-1570, 2008 WL 2669290, at *8 (E.D. Pa. July 7, 2008).  Without averments supporting Defendants' awareness of the picture postings, Plaintiff has failed to allege a viable Section 1983 claim for failure to discipline.

c.    *Denial of Promotion*

As the final basis upon which his Section 1983 claim rests, Plaintiff alleges that he was informed by a "high-ranking superior" that he would "never be promoted because he was PBA President."  (Compl. ¶ 5) (internal quotations omitted.)  As stated earlier, a municipality can only be held liable under Section 1983 if the action is attributable to a custom or a policy, the latter of which is "made by an official statement of a decisionmaker possessing final authority to establish municipal policy . . . ."  <u>Chernavsky v. Twp. of Holmdel Police Dept.</u>, 136 F. App'x 507, 509 (3d Cir. 2005) (internal quotations and citation omitted).

Plaintiff alleges sufficient facts in the Complaint to withstand dismissal of this claim, at this stage of the litigation.  Although discovery may show that the "high-ranking superior" was not a decision-maker with final authority over promotions, this Court is not inclined to dismiss Plaintiff's Section 1983 claim for refusal to promote at this time.  Plaintiff's Section 1983 claim resting upon Plaintiff's denial of a promotion withstands dismissal.

2.      Violation of First Amendment Rights

Defendants also argue that Plaintiff's Section 1983 claim should be dismissed because Plaintiff failed to allege that he engaged in any speech or participated in any association entitled to protection under the First Amendment.  After analyzing Defendants' argument, this Court finds that dismissal of Plaintiff's Section 1983 claim is inappropriate at this juncture.

Courts apply a three-part test to determine whether a public employee's expressions are entitled to protection under the First Amendment.  First, the public employee "must establish [that] the activity in question was protected" or, in other words, that the speech involved a matter of "public concern."  Connick v. Myers, 461 U.S. 138, 147 (1983);  Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).  Second, the public employee "must demonstrate [that] his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees."  Baldassare, 250 F.3d at 195.  Third, the public employee "must show [that] the protected activity was a substantial or motivating factor in the alleged retaliatory action."  Id.

Plaintiff alleges in the Complaint that he was advised he would never be promoted because of his status as president of the PBA.  (Compl. ¶ 5.)  Plaintiff's position as president of the PBA, in and of itself, is entitled to First Amendment protection.  See Donovan v. Incorporated Village of Malverne, 547 F. Supp. 2d 210, 218 (E.D.N.Y. 2008) (holding that Plaintiff's membership on the PBA executive board amounted to union membership, is a matter of public concern, and therefore should be protected under the First Amendment); Guarnieri v. Duryea Borough, No. 05-1422, 2007 WL 4085563, at *16 (M.D. Pa. Nov. 15, 2007) (holding that union membership is protected under the First Amendment, and that courts need not even

10

apply the public concern test articulated in <u>Connick</u>).

Plaintiff also asserts in the Complaint that each time he spoke out on PBA matters, he was retaliated against by Defendants.  (Compl. ¶ 5.)  By stating that he spoke out on PBA matters, Plaintiff has alleged sufficient facts to support a Section 1983 claim for violation of the First Amendment.  "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community."  <u>Baldassare</u>, 250 F.3d at 195.  "Such an inquiry requires the court to consider the content, form, and context of the speech."  <u>Id.</u>  "The content of the speech may involve a matter of public concern if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials."  <u>Id.</u>  While Plaintiff may not be able to present sufficient evidence to satisfy this standard at the summary judgment stage, his pleading alleges facts sufficient to overcome a motion to dismiss.

While the particulars of Plaintiff's speech regarding the PBA are not known at this stage of the litigation, this Court is convinced that Plaintiff has passed the threshold pleading requirements necessary to articulate a First Amendment violation.  Defendants' request for dismissal of Plaintiff's Section 1983 claim is denied.

**B.**     <u>**New Jersey Conscientious Employee Protection Act**</u>

Next, Defendants urge this Court to dismiss Plaintiff's claim under the New Jersey Conscientious Employee Protection Act, arguing that Plaintiff has not alleged sufficient facts to support such a claim.

The CEPA, codified at N.J. STAT. ANN. § 34:19-3, provides protection to employees that report illegal or unethical workplace activities.  <u>Dzwonar v. McDevitt</u>, 828 A.2d 893, 900 (N.J.

11

2003).  "A plaintiff who brings a cause of action pursuant to [N.J. STAT. ANN. §] 34:19-3c must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in [N.J. STAT. ANN. §] 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action."  Id. Although a plaintiff need not allege that a violation of law in fact occurred, he or she must allege facts "identify[ing] a statute, regulation, rule, or public policy that closely relates to the complained-of conduct."  Id.

Plaintiff presents no facts describing the circumstances surrounding an alleged violation of a statute, rule, or regulation.  Instead, Plaintiff merely states in the Complaint that he reported "certain wrongs" to his superiors.  (Compl. ¶ 17.)  Although Plaintiff brashly states in his brief that "all this court need do is refer to the Baldani certification submitted herewith, which will clearly show that plaintiff Baldani has a more than viable claim under the N.J. C.E.P.A.," this Court shall remind Plaintiff that, in resolving a Rule 12(b)(6) motion, a court may only consider "the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record."  W. Penn Power Co., 147 F.3d at 259.

After examining the facts alleged in the four corners of the Complaint, this Court can not discern an allegation sufficient to maintain a CEPA claim against Defendants.  Plaintiff's CEPA claim, accordingly, shall be dismissed, without prejudice.

**C.**    **Intentional Infliction of Emotional Distress**

Last, Defendants draw upon the New Jersey Tort Claims Act (the "NJTCA") to assert

immunity from Plaintiff's intentional infliction of emotional distress claim.

The NJTCA states that, "[e]xcept as otherwise provided by this act, a public entity is not

liable for an injury, whether such injury arises out of an act or omission of the public entity or a

public employee or any other person."  N.J. STAT. ANN. § 59:2-1 (West, Westlaw through

L.2008).  Under this statute, public entities cannot be found liable for intentional torts committed

by their employees.  N.J. STAT. ANN. § 59:2-10 (West, Westlaw through L.2008) ("A public

entity is not liable for the acts or omissions of a public employee constituting a crime, actual

fraud, actual malice, or willful misconduct.").  "[C]ourts in this District have interpreted Section

59:2-10 of the New Jersey Tort Claims Act to bar public entities from liability for claims of . . .

intentional infliction of emotional distress."  Warnett v. Corr. Med. Svcs., No. 07-1291, 2008

WL 930739, at *7 (D.N.J. Mar. 31, 2008) (internal citations and quotations omitted).

Here, Plaintiff alleges that he suffered injuries as a result of Defendants' intentional

infliction of emotional distress.  (Compl. ¶ 22.)  However,"a public corporation, such as a city or

other public body, by reason of its being an artifical [sic] legal entity created by law to perform

limited governmental functions," cannot itself perform an intentional tort on an individual.  See

O'Connor v. Harms, 266 A.2d 605, 26-27 (N.J. Super. Ct. App. Div. 1970) (holding that

defendant board of education is an artificial entity and therefore could not entertain malice

against plaintiff); see also Farris v. County of Camden, 61 F. Supp. 2d 307, 346-67 (D.N.J. 1999)

(holding that principle enunciated in O'Connor "applies with equal force to tort claims where

scienter is an element of the cause of action."); Lohman v. Twp. of Oxford, No. 91-7037, 1992

13

WL 95514, at *5 (E.D. Pa. Apr. 22, 1996) (applying logic of O'Connor to dismiss plaintiff's

intentional infliction of emotional distress claim as barred by the NJTCA).  Defendants cannot be

held liable for an intentional tort committed by its employees.  Since Plaintiff cannot maintain an

intentional tort claim against Defendants, his cause of action for intentional infliction of

emotional distress must be dismissed.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss shall be granted, in part,

and denied, in part.  While Plaintiff has not pled a viable Section 1983 claim for violation of the

First Amendment based on his allegations surrounding his disciplinary charges and the posting of

pictures, Plaintiff may pursue his Section 1983 claim based on Defendants' alleged refusal to

promote him.  Plaintiff's state-law claim under CEPA and his common-law claim for intentional

infliction of emotional distress shall be dismissed.


         S/Joseph A. Greenaway, Jr.
        JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: September 25, 2008

14