NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GINO BALDANI, Millburn Police Officer, | Hon. Katharine S. Hayden |
| Plaintiff, | Civil Action No. 07-4792 |
| v. | **MEMORANDUM OPINION** |
| TOWNSHIP OF MILLBURN, GOVERNING BODY OF THE TOWNSHIP OF MILLBURN, | |
| Defendant. | |

**HAYDEN**, District Judge:

This matter comes before the Court upon the motion (Doc. No. 39) for summary judgment filed by Defendant the Township of Millburn ("Township").[1]  For the following reasons, the Court will grant Defendant's motion.

I.  BACKGROUND

This matter involves a Millburn police officer's claim that the Township[2] violated his First Amendment rights by retaliating against him for his activities as the president of a local

---

[1] This matter was reassigned to the undersigned by Order of April 19, 2010.

[2] The Court notes that Plaintiff's Complaint lists the Township's "Governing Body" as a separate Defendant, but the Township contends that its Governing Body is not a separate entity. Because Plaintiff's Complaint and arguments do not present distinct allegations about the Township's Governing Body, the Court understands Plaintiff's Complaint to assert claims against only the Township.

union.³ At all times relevant to this suit, Plaintiff Gino Baldani has been a police officer in the Millburn, Essex County, Police Department and the president of Millburn's Policemen's Benevolent Association (PBA).⁴ Plaintiff alleges that Township officials engaged in two retaliatory acts based on his union affiliation: (1) sanctions levied by the Township's Business Administrator in 2009 on the basis of disciplinary charges filed in December 2005, and (2) denying Plaintiff a promotion to the Detective Bureau in 2007.

   A. *Disciplinary Action*

With regard to the disciplinary sanctions, the undisputed record reveals that Plaintiff was charged with departmental rule violations in December 2005, that Township Business Administrator Timothy Gordon presided over Plaintiff's disciplinary hearing on March 31, 2006, and that Administrator Gordon rendered judgment on Plaintiff's charges on February 27, 2009, finding Plaintiff guilty of conduct unbecoming a public employee in violation of N.J.A.C. § 4A:2-3.2(a)(6), as well as violations of departmental rules. (Harrison Aff., Ex. C at 1–2, 5.) In making that decision, Administrator Gordon made the following findings of fact: that Plaintiff called Officer Tim Burns at home twice on November 10, 2005, during which time Plaintiff inquired about the Police Department's internal investigation into tampering with mobile computers in police vehicles; that Plaintiff "admitted that he yelled at Officer Burns for allegedly

---

³The Hon. Joseph A. Greenaway, then-United States District Judge, previously dismissed Plaintiff's claims for violation of New Jersey's Conscientious Employee Protection Act and intentional infliction of emotional distress. (*See* Doc. No. 12 (Memorandum Opinion of Sept. 25, 2008).)

⁴Although the Complaint and the parties do not identify the "PBA," Judge Greenaway inferred in his opinion resolving Defendants' motion to dismiss that this designation referred to the Policemen's Benevolent Association (Doc. No. 12 ("MTD Opinion") at 1 n.1), and neither party has disputed this understanding.

incriminating a fellow officer and union member"; and that Plaintiff "threatened Officer Burns with expulsion from the union and with on-the-job ostracism." (*Id.* at 3–4.) As a penalty for Plaintiff's misconduct, Administrator Gordon imposed a five-day suspension, but he suspended that sentence because Plaintiff had not been subject to formal discipline since the 2005 charges. (*Id.* at 5.) Administrator Gordon attributed the delay between the 2006 hearing and the February 2009 decision to the Township's misplacement of the hearing tapes (*id.*), but it was later discovered that the tapes had been kept by the Township Clerk in a locked safe in close proximity to Administrator Gordon's office since the hearing (Gordon Aff. ¶ 5; Monarque Dep. at 18–27).

Plaintiff contends that the disciplinary action was retaliatory. Although Administrator Gordon attests that the disciplinary charges were filed by the Police Department (Gordon Aff. ¶ 4), Plaintiff believes that Administrator Gordon initiated the disciplinary proceedings (Pl.'s Br. at 13).[5] Plaintiff notes that Administrator Gordon admitted during his deposition that it was "possible" that he became agitated when Plaintiff approached him to discuss PBA matters (*see* Gordon Dep. at 39:15), and that he may have ordered Plaintiff to leave Town Hall following a disagreement on one occasion (*id.* at 186–87). Plaintiff further notes that Administrator Gordon admitted he did not consider the testimony of a former PBA president, presented in Plaintiff's defense at the disciplinary hearing, in reaching his decision on Plaintiff's disciplinary charges. (*Id.* at 226–27). These circumstances, as well as the three-year delay between the hearing and the

---

[5]The apparent basis for Plaintiff's belief comes from a private investigator's assertion that the Chief of Police informed him that he "had absolutely nothing to do with the charges being brought against Officer Baldani." (Toscano Aff., Ex. G.) Beyond the fact that this statement is hearsay, it does not support the contention that Administrator Gordon initiated the disciplinary proceeding against Plaintiff.

decision, which Administrator Gordon attributed to missing hearing tapes, lead Plaintiff to believe that Administrator Gordon used the disciplinary process to retaliate against Plaintiff. (*See* Pl.'s Br. at 11–14.)

By letter of November 30, 2009, Plaintiff's counsel informed the Court that the New Jersey Civil Service Commission denied Plaintiff's appeal of Administrator Gordon's disciplinary decision for lack of jurisdiction. (Doc. No. 43 & Ex. 1.) The Civil Service Commission's March 31, 2009 letter denying review of Plaintiff's claim informed Plaintiff that, if there was no mechanism for appealing his adverse disciplinary decision under his employer's regulations or "negotiated labor agreement," then Plaintiff could seek relief from the decision in the Law Division of the Superior Court of New Jersey. (*Id.*) In addition to the civil action noted in the Civil Service Commission's letter, the Township argues that Plaintiff had recourse to the arbitration grievance procedure contained in Article III of the Township's collective bargaining agreement (CBA). (Gordon Aff. ¶ 6 & Ex. 1 (CBA).) The Township submits, and Plaintiff does not dispute, that Plaintiff has not attempted to appeal Administrator Gordon's disciplinary decision through either the CBA grievance procedure or a civil action in Superior Court.

  B. *Non-Promotion*

With regard to Plaintiff's alleged retaliatory non-promotion to the Detective Bureau in 2007, the Township has submitted evidence, in the form of affidavits, indicating that Chief of Police Paul Boegershausen, in consultation with Captain Gregory Weber, made the selection to fill the detective vacancy. (*See* Boegershausen Aff. ¶¶ 5–6; Weber Aff. ¶¶ 2–13.) Captain Weber asserts that he enlisted Lieutenant David Cuomo, who oversaw the day-to-day operations of the Detective Bureau, to interview the seven applicants (including Plaintiff) for the position,

and that Lt. Cuomo recommended Officer Mendelsohn for the position. (Weber Aff. ¶¶ 2, 4.) After independently reviewing the recommendation, Captain Weber adopted Lt. Cuomo's recommendation and forwarded Officer Mendelsohn's name to Chief Boegershausen. (Weber Aff. ¶¶ 11–12.) Chief Boegershausen attests that he "was the final decisionmaker" who approved the selection of Officer Mendelsohn for the detective vacancy, and that neither Administrator Gordon nor the Township Committee had any influence on this personnel decision. (Boegershausen Aff. ¶ 6.) Administrator Gordon likewise attests that he played no role in the 2007 selection for the detective vacancy. (Gordon Aff. ¶ 9.) Nevertheless, Plaintiff disputes that Chief Boegershausen was the final decisionmaker regarding the detective vacancy, suggesting instead that Administrator Gordon "may be responsible for denying [Plaintiff]" the detective position. (Pl.'s Br. at 15.)

During the selection period for the detective vacancy, Plaintiff asserts that Lt. Cuomo informed him that he would never get promoted to the detective position because he was the President of the PBA. (Baldani Dep. at 18–19; Pl.'s Answers to Interrogs. No. 10–12.) Plaintiff contends that his superiors selected three finalists to try out for the detective position, but that he was denied this opportunity. (*See* Baldani Dep. at 23:12–18.) Both Chief Boegershausen and Captain Weber claim that, if Plaintiff had been recommended for the detective position, they would have rejected the recommendation on the basis of Plaintiff's prior disciplinary history, which included a suspension for submitting a falsified police report in 2001. (Boegershausen Aff. ¶¶ 3–4, 7; Weber ¶¶ 6–11 & Ex. 1 (notices of disciplinary action, hearing waiver, suspension notice, and internal affairs interview).)

*C. The Township's Motion for Summary Judgment*

The Township now moves for summary judgment, arguing first that the Township is exempt from liability under 42 U.S.C. § 1983 because the retaliatory acts of which Plaintiff complains do not constitute Township policies or customs, and secondarily that Plaintiff has failed to substantiate the alleged First Amendment violations, because he presented no evidence that his protected union status caused or otherwise influenced the alleged retaliatory actions.[6] Plaintiff responds that the Township is subject to § 1983 liability because Administrator Gordon's disciplinary sanctions and role in Plaintiff's non-promotion constituted Township policy because Administrator Gordon had final policymaking authority, and Plaintiff contends that he has submitted evidence establishing issues of fact regarding retaliation for Plaintiff's protected union status. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

II.   ANALYSIS

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

---

[6]Alternatively, the Township seeks summary judgment to the extent that Plaintiff's § 1983 claim seeks punitive damages. Although the Court does not reach this issue, the law is well settled that § 1983 does not permit the imposition of punitive damages against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

(noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

Plaintiff alleges that the Township, through its officials, engaged in two retaliatory actions in violation of his First Amendment rights: a disciplinary process that began with charges in 2005 and culminated with Administrator Gordon's February 2009 decision, and the Township's decision not to promote him to a vacancy in the Detective Bureau in 2007. For each alleged retaliatory act, the Township challenges both the legal basis for municipal liability pursuant to 42 U.S.C. § 1983 and the factual sufficiency of Plaintiff's claims that the Township retaliated against him on the basis of his union affiliation. For the following reasons, the Court agrees with the Township that the facts supporting each theory of retaliation fail as a matter of law to establish either municipal liability under § 1983 or a First Amendment violation.

A. Disciplinary Action

Plaintiff's disciplinary action theory of retaliation fails as a matter of law because Administrator Gordon's review and disposition of Plaintiff's disciplinary charges do not constitute a policy or custom attributable to the Township under § 1983. Generally speaking, § 1983 exempts municipalities from vicarious liablity for the constitutional torts of its employees. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *see also Brennan v. Norton*, 350 F.3d 399, 427 (3d Cir. 2003). Municipal liability only attaches under

§ 1983 where the constitutional tort derives from a municipal "policy, ordinance, regulation or officially adopted decision that has been promulgated by the municipality's officers," or from a governmental custom. *Brennan*, 350 F.3d at 427 (citing *Monell*, 435 U.S. at 690–91). The decision of a municipal official can constitute an unconstitutional policy subjecting the municipality to liability under § 1983 where state or local law vests that official with final policymaking authority for the municipality in that particular context. *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997) (instructing courts determining § 1983 liability "to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue"). Yet, "if a municipal employee's decision is subject to review, even discretionary review, it is not final and that employee is therefore not a policymaker for purposes of imposing municipal liability under § 1983." *Brennan*, 350 F.3d at 428 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84 (1986) (plurality)).

  Plaintiff argues that Administrator Gordon's adjudication of his disciplinary proceedings constitutes Township policy under § 1983 because the Township Code gave Administrator Gordon final policymaking authority over disciplinary proceedings. To support this contention, Plaintiff specifically notes that, pursuant to the Township Code, the Business Administrator acts as the Township's "personnel officer" with the authority to hire and promote Township employees (Toscano Aff., Ex. E ("Township Code"), Article II, § 2-2.5(o)), oversees the "general management of all Township business" (*id.* § 2-2.5(a)), and "[s]upervise[s] and direct[s] the business activities and functions of all departments, boards, officials and employees of the Township" (*id.* § 2-2.5(b)). Plaintiff also relies on Administrator Gordon's deposition testimony

that he has the authority to review the Chief of Police's personnel decisions (*see* Gordon Dep. at 30–31), as well as the undisputed fact that Administrator Gordon presided over Plaintiff's disciplinary hearing and adjudicated the underlying charges. The Township does not dispute this evidence, and, at first blush, it would appear that Administrator Gordon had final policymaking authority with regard to the Township's disciplinary action against Plaintiff.

However, the Township notes that Article III of the CBA governing the Township's relationship with its employees provided Plaintiff with an arbitration grievance procedure to appeal Administrator Gordon's adverse disciplinary decision. The Township maintains that this grievance mechanism, along with the option of challenging the disciplinary decision in Superior Court, demonstrates that Administrator Gordon did not have *final* policymaking authority over Township employee disciplinary actions. Plaintiff does not contest that the CBA governed his employment relationship with the Township, but it appears that Plaintiff contends that the CBA grievance procedure did not apply to this type of disciplinary action. (Pl.'s Resp. Statement of Material Facts ¶¶ 11, 23). The Court must therefore determine whether the CBA provided for administrative review of Plaintiff's disciplinary action.

Article III of the CBA provides a grievance procedure that provides for review of a decision by the Township's Business Administrator through binding arbitration. (CBA Art. III(C), Step 3.) This procedure is available for resolution of all grievances, which the CBA defines as "any controversy arising over the interpretation or adherence to the terms and conditions of [the CBA]." (*Id.* Art. III(B).) In light of Article II's express reservation of the Township's authority under state law "[t]o take any permissible disciplinary action for good and just cause according to law" (*id.* Art. II(A)(3)), the Court agrees with the Township that

disciplinary actions fall within the terms and conditions of the CBA and, therefore, are subject to review through the Article III grievance process. The question remains whether the availability of this grievance procedure defeats Plaintiff's claim that Administrator Gordon acted with final policymaking authority for the Township with regard to the disciplinary action against Plaintiff. The Court concludes that it does.

The Third Circuit's decision in *Brennan v. Norton* is instructive. Like the present case, *Brennan* involved a § 1983 claim of First Amendment retaliation brought by a municipal employee (there, a firefighter) against the municipality on the basis of adverse disciplinary acts instituted by a municipal official (there, the Township Manager), as well as that official's influence on the denial of the plaintiff's request for an extension of paid Injury on Duty (IOD) leave. *See* 350 F.3d at 406–10, 426–27. Because state and local law provided for administrative appeals of the Township Manager's actions through state (New Jersey Public Employment Relations Commission, New Jersey Department of Personnel) and local entities (Township Council, the Mayor), the *Brennan* court concluded that the Township Manager's conduct did not constitute final township policy under § 1983 for purposes of imposing municipal liability. *Id.* at 428.

Plaintiff appears to argue that *Brennan* is distinguishable because the Township Manager in that case had less authority than Millburn's Business Administrator and was subject to review by a number of municipal authorities. (*See* Pl.'s Br. at 10–11.) Yet *Brennan*'s reference to administrative review by municipal and state agencies, as well as its categorical conclusion that a municipal employee's decisions do not constitute final policy under § 1983 "if [the] municipal employee's decision is subject to review, even discretionary review," forecloses this argument.

As the Court concluded above, Plaintiff in this case had recourse to the grievance mechanism provided by the Township's CBA to appeal the Business Administrator's treatment of his disciplinary action through binding arbitration. Although the administrative review process in this case differs from that in *Brennan*, the availability of discretionary review demonstrates that Administrator Gordon's conduct with regard to Plaintiff's disciplinary action does not constitute final Township policy under § 1983. *Cf. Praprotnik*, 485 U.S. at 127 (plurality) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality."). Because Administrator Gordon does not constitute a final policymaker for purposes of § 1983 and Plaintiff presents no other basis for treating his disciplinary action as Township policy under § 1983, Plaintiff cannot establish municipal liability under § 1983 as a matter of law. No genuine issue of fact remains regarding municipal liability, and this Court will grant the Township's motion with regard to Plaintiff's disciplinary action theory of retaliation.

However, even if the record permitted a finding of municipal liability for Plaintiff's disciplinary action, Plaintiff's First Amendment claim fails on the merits because Plaintiff has presented no evidence that Administrator Gordon's treatment of his disciplinary charges was motivated by an impermissible retaliatory intent. In order to present a claim of First Amendment employment retaliation, a plaintiff must show that the protected activity (i.e., speech, association) "was a substantial or motivating factor in [the adverse employment action]." *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1270 (3d Cir. 1994) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If a plaintiff presents evidence of this causal nexus, the defendant employer will then have the opportunity to rebut plaintiff's claim by presenting

11

evidence that it would have taken the same adverse action regardless of plaintiff's protected activity. *Swineford*, 15 F.3d at 1270 (citing *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir. 1983)).

Here, Plaintiff's First Amendment claim suffers from the fact that he did not successfully appeal Administrator Gordon's disciplinary decision. Indeed, it appears that Plaintiff did not attempt to challenge the disciplinary decision via either the CBA grievance procedure or in Superior Court, and Plaintiff does not suggest (nor could he) that this Court has jurisdiction to review an appeal of the decision. Accordingly, Plaintiff is precluded from relitigating the issues determined by his disciplinary proceeding, and this Court must accept Administrator Gordon's factual findings that Plaintiff committed conduct unbecoming of a police officer in violation of N.J.A.C. § 4A:2-3.2(a)(6), as well as other departmental violations.[7] *See Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) (noting that, for purposes of § 1983 claims, "state administrative factfinding is entitled to preclusive effect in the federal courts when the agency ruling remains unreviewed by state courts"); *see also Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1073–74 (3d Cir. 1990). Thus, the issue before this Court is whether Administrator Gordon's treatment of Plaintiff's disciplinary action—and not the merits of his decision—evinces an impermissible retaliatory motive.

Although Plaintiff has presented evidence that he may have had arguments with Administrator Gordon, he has presented no evidence that these arguments derived from

---

[7]Indeed, Plaintiff acknowledges that he cannot use the present action to challenge the merits of Administrator Gordon's disciplinary decision. (*See* Pl.'s Br. at 7 n.1 ("Though [Plaintiff] vigorously disputes the hearing officer's findings and conclusion, [he] accepts them for the purposes of this summary judgment motion only and does not relitigate them here.").)

253    Plaintiff's union status or particular union issues.[8]  Plaintiff highlights certain testimony by

254    Administrator Gordon that supports the conclusion that the two had a tense working relationship,

255    but, when viewed in the light most favorable to Plaintiff, this evidence does not permit a

256    reasonable inference that Administrator Gordon discriminated against Plaintiff because of

257    Plaintiff's protected union status.[9]  Plaintiff bears the burden of "establish[ing] that the exercise

258    of his First Amendment rights played some substantial role in the relevant decision."  *Suppan v.*

---

[8]Indeed, it is not clear from the record whether Plaintiff alleges that Township officials retaliated against him because of his speech on behalf of specific union issues or his strong affiliation with the PBA as its presiding officer.

[9]Specifically, Plaintiff argues that the following evidence reasonably supports a finding of retaliation: Administrator Gordon's testimony regarding his working relationship with Officer Baldani, his testimony regarding the placement of the hearing tapes and knowledge of the Township's timeline for rendering a decision, his testimony that he did not consider certain hearing testimony favorable to Plaintiff, and Plaintiff's unsubstantiated belief that Administrator Gordon initiated the disciplinary proceedings against Plaintiff. (*See* Pl.'s Br. at 12–14.)

With regard to Administrator Gordon's working relationship with Plaintiff, when Administrator Gordon was asked about a particular conversation he had with Plaintiff regarding a particular PBA issue, he repeatedly denied that Plaintiff's discussion of PBA issues bothered him, ultimately conceding in response to repeated questioning that "[a]nything's possible," and "there might have been conversations [with Plaintiff] where I raised my voice." (Gordon Dep. at 38:9–39:20.) Administrator Gordon later admitted that "[t]here might have been some" heated conversations between the two regarding PBA issues, but noted that he didn't remember any of them in detail. (*Id.* at 40:16–21.) When asked about the occurrence of heated arguments that led him to order Plaintiff to leave Town Hall, Administrator Gordon stated that these circumstances may have happened once (*id.* at 187:11), but that he "d[id not] recall the circumstances" (*id.* at 189:19), and that he thought removal from Town Hall was warranted when someone disturbed the workplace environment (*id.* at 188–89). While the deposition testimony relied on by Plaintiff provides support for the contention that Administrator Gordon and Plaintiff had an adversarial working relationship, it does not support Plaintiff's claim of retaliation on the basis of his union status, and Plaintiff's unsupported speculation that Administrator Gordon instituted the proceedings, *see supra* note 5 and accompanying text, cannot fill in the evidentiary gap.

With regard to the misplacement of the hearing tapes and Administrator Gordon's decision not to consider the testimony of a former PBA president, Plaintiff presents no evidence linking these occurrences to his protected union status, and Administrator Gordon's testimony on these matters does not permit the inference that these acts constituted retaliation. (*See* Gordon Aff. ¶ 5; Gordon Dep. at 151–75, 226–27.)

13

*Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000). In the absence of evidence that Administrator Gordon's treatment of Plaintiff's disciplinary action was motivated by retaliatory intent Plaintiff may not sustain a First Amendment retaliation claim on the basis of this event. *Cf. Mosca v. Cole*, 384 F. Supp. 2d 757, 766–68 (D.N.J. 2005) (finding no evidence that Plaintiff's protected First Amendment activity—prosecutorial discretion—influenced the mayor's decision to terminate his employment).

B. *Non-Promotion*

Plaintiff's non-promotion theory of retaliation fails as a matter of law because Chief Boegershausen's selection of a detective does not constitute a policy or custom attributable to the Township under § 1983. As noted above, § 1983 exempts municipalities from vicarious liablity for the constitutional torts of its employees unless the constitutional tort derives from a municipal policy or custom. *Monell*, 435 U.S. at 690–91; *Brennan*, 350 F.3d at 427. Section 1983 permits municipal liability for the decision of a municipal official with final policymaking authority, but not if that official's decision is subject to review by a higher authority. *Brennan*, 350 F.3d at 428 (citing *Praprotnik*, 485 U.S. at 127 (plurality); *Pembaur*, 475 U.S. at 481–84 (plurality)). Plaintiff argues that his 2007 non-promotion to the Detective Bureau constituted an unconstitutional Township policy.

Here, the record conclusively establishes that Chief Boegershausen, acting on the recommendation of Captain Weber, made the ultimate decision to assign Officer Mendelsohn to the detective vacancy. (Boegershausen Aff. ¶¶ 5–6; Gordon Aff. ¶ 9; Weber Aff. ¶¶ 3, 12–13.) Plaintiff disputes this contention, noting that the Township Code vested Administrator Gordon with the authority to review Chief Boegershausen's personnel decisions. (Pl.'s Br. at 15–16

(citing Township Code, Article II, § 2-2.5(o) (authorizing the Business Administrator to hire and promote employees as the Township's "personnel officer"); Gordon Dep. at 31 (noting that Township's Business Administrator had the authority to review the Chief of Police's personnel decisions under the Township's ordinances)).)  Yet, while Plaintiff speculates that Administrator Gordon "*may* have either participated in or been responsible for the decision to bypass [Plaintiff]," (Pl.'s Br. at 16 (emphasis added)), and Plaintiff presents evidence that Administrator Gordon had the authority to review this personnel decision, Plaintiff has presented no evidence that Administrator Gordon actually *did* participate in the decision, either directly or indirectly. Absent cognizable evidence that Administrator Gordon actually participated in this personnel decision, Plaintiff cannot establish municipal liability for this event under § 1983.  *See, e.g.*, *Pembaur*, 475 U.S. at 481–82 (plurality) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.") (citation omitted); *Jones v. City of Wilmington*, 299 F. Supp. 2d 380, 391 (D. Del. 2004) ("Influence or discretion has never been the determinant of final policymaking authority.").

      While Plaintiff presents no evidence suggesting that someone other than Chief Boegershausen filled the vacancy in the Detective Bureau, Plaintiff's evidence that another Township official had the discretionary authority to review Chief Boegershausen's decision establishes that Chief Boegershausen did not exercise final policymaking authority either.  *See Brennan*, 350 F.3d at 428.  Because Chief Boegershausen does not constitute a final policymaker

for purposes of § 1983 and Plaintiff has not presented any evidence suggesting that another official with final policymaking authority made this personnel decision, Plaintiff cannot establish municipal liability under § 1983 as a matter of law. No genuine issue of fact remains regarding municipal liability, and this Court will grant the Township's motion with regard to Plaintiff's non-promotion theory of retaliation.

However, assuming *arguendo* that the record permits a finding of municipal liability for Plaintiff's non-promotion, Plaintiff's First Amendment claim fails on the merits because Plaintiff has presented no evidence that Chief Boegershausen's decision not to promote Plaintiff was motivated by an impermissible retaliatory intent. As noted above, in order to raise a First Amendment employment retaliation claim, a plaintiff must show that the protected activity "was a substantial or motivating factor in [the adverse employment action]." *Swineford*, 15 F.3d at 1270. If a plaintiff satisfies this burden, the defendant employer will then have the opportunity to rebut plaintiff's claim by presenting evidence that it would have taken the same adverse action regardless of plaintiff's protected activity. *Id.* (citing *Czurlanis*, 721 F.2d at 103).

The only evidence of retaliatory intent presented by Plaintiff is a comment made by Lt. Cuomo during the detective selection process that Plaintiff would not be promoted because of his prominent union position. (Baldani Dep. at 18–19; Pl.'s Answers to Interrogs. No. 10–12.) While Lt. Cuomo may have intended to discriminate against Plaintiff on the basis of his union affiliation, Lt. Cuomo was not the final decisionmaker in this process. Indeed, the undisputed record reflects that both Captain Weber and Chief Boegershausen reviewed and approved the recommendation of Officer Mendelsohn for the detective vacancy. (Boegershausen Aff. ¶ 6; Weber ¶¶ 11–12.) Whereas the Township presents undisputed evidence that Chief

Boegershausen and Captain Weber both would have rejected Plaintiff, had he been recommended to them, because of his prior falsification of a police report (Boegershausen Aff. ¶¶ 3–4, 7; Weber ¶¶ 6–11 & Ex. 1), Plaintiff presents no evidence that Chief Boegershausen and Captain Weber intended to discriminate against him on the basis of his union affiliation. Nor does Plaintiff dispute their description of his 2001 disciplinary infraction for falsification of a police report. In the absence of evidence that Chief Boegershausen's decision not to appoint Plaintiff to the detective vacancy was tainted by retaliatory intent, Plaintiff may not sustain a First Amendment retaliation claim on the basis of this event.

III. CONCLUSION

For the aforementioned reasons, the Court will grant the Township's motion (Doc. No. 39) for summary judgment. An appropriate form of order accompanies this Memorandum Opinion.

Dated: June 30, 2010

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.